**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| NORMA IRIS BÁEZ SOTO | **CIVIL NO.** |
| **Plaintiff** | |
| **v.** | **RE:** Violations of the Fair Debt Collection Practices Act. |
| CICA COLLECTION AGENCY, INC.; INSURANCE COMPANIES ABC; JOHN DOE AND JANE DOE | |
| **Defendants** | |

## CLASS ACTION COMPLAINT

**COMES NOW, NORMA IRIS BÁEZ SOTO**, (from now on, the "Plaintiff") on behalf of herself and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, all others similarly situated, through the undersigned counsels, and before this Honorable Court respectfully **STATES**, **ALLEGES** and **PRAYS** as follows:

## I.    INTRODUCTION

1.     This action arises out of Defendant's unlawful and abusive debt collection practices in violation of the Fair Debt Collection Practices Act (from now on, "FDCPA"), 15 U.S.C. § 1692, et seq. Despite Plaintiff having fully satisfied the alleged consumer debt, as further described below, prior to December 22, 2023, Defendant attempted to collect on the nonexistent debt through false, misleading, and unconscionable representations. In its collection letter, Defendant not only claimed Plaintiff owed an invalid balance but also threatened legal proceedings, including the imposition of attorney's fees and costs—actions it had no lawful basis to pursue. These collection efforts, aimed at coercing payment of funds not owed, caused Plaintiff financial harm, emotional distress, and unnecessary expenses to retain legal counsel to address Defendant's improper demands. The FDCPA was enacted to prevent precisely these types of

1

abusive and deceptive collection practices, which undermine consumers' financial stability and peace of mind.

2.      Through this action, Plaintiff seeks to hold Defendant accountable for its violations of the FDCPA against Plaintiff and other similarly situated (from now on, "Class members" and/or collectively, "Plaintiffs"). Plaintiffs respectfully request an award of actual damages, statutory damages, and attorney's fees and costs under 15 U.S.C. § 1692k to remedy the harm caused by Defendant's unlawful conduct and to deter similar violations in the future.

## II.      JURISDICTION AND VENUE

3.      Jurisdiction is invoked under the provision 28 U.S.C. §1331 and 15 U.S.C. §1692(k)(d).

4.      Venue is proper in this District because all the events and omissions giving rise to the claims asserted in the Complaint occurred within this judicial district. In addition, Defendants are domiciled in this District and do business within this District.

## III.      THE PARTIES

5.      Plaintiff, **Norma Iris Báez Soto**, is a natural person and a citizen of the Commonwealth of Puerto Rico. At all relevant times Plaintiff has resided in the municipality of Bayamón, Puerto Rico.  Plaintiff is a "consumer" as such term is defined by the FDCPA.

6.      Defendant, **CICA Collection Agency, Inc.** (from now on, "CICA" or "Defendant") is a Corporation registered to do business in the Commonwealth of Puerto Rico. CICA is a domestic corporation domiciled in San Juan, Puerto Rico with a designated office address of #403 Calle del Parque Suite 3, San Juan, Puerto Rico, 00912 and PO BOX 12338, San Juan, Puerto Rico, 00914 as designated postal address. CICA is a collection agency that utilizes the instrumentalities of interstate commerce (i.e., telephone, e-mail, texts, US Mail, etc.) to conduct the business of

collecting debts.  On behalf of clients, CICA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due. CICA is a debt collector as such term is defined in 15 U.S.C. §1692a(6).

7.    Defendants, **Insurance Companies ABC**, are the insurers of the Defendant in this proceeding. As such, they are liable for the Defendant's actions against the Plaintiffs under applicable law and are responsible for the damages and misconduct alleged in this Complaint

8.    Defendants, **John Doe** and **Jane Doe** are fictitious names used to identify one or more individuals whose true identities are currently unknown, but who participated in the acts and omissions giving rise to the claims committed against the Plaintiffs. These individuals may include, but are not limited to, agents, employees, or representatives of the named Defendant, as well as their successors, assigns, or entities acting on their behalf.

## IV.    THE FACTS

### A. GENERAL ALLEGATIONS:

9.    Plaintiff re-alleges each and every previous allegation as if fully established herein.

10.    The Plaintiff is a natural persons.

11.    Allegedly, Plaintiff entered into a consumer transaction (from now on, "Consumer Debt") with **CLARO Puerto Rico** (from now on, "CLARO").

12.    The Consumer Debt, based on alleged goods sold and/ or services rendered, was used for Plaintiff's personal, household, or family purposes; meaning, that the alleged debt was incurred for the benefit of Plaintiff as well as her family and her household.

13.    The Consumer Debt is a "debt" as such term is defined by 15 U.S.C. §1692a(5) as it was incurred for personal, family, or household purposes.

14.     The Plaintiff, as a natural person and allegedly obligated to pay a debt, is a 'Consumer' as such term is defined by 15 U.S.C. §1692a(3).

15.     Sometime on/or before December 22, 2023, CLARO retained CICA to commence collection efforts on the alleged Consumer Debt.

16.     The FDCPA defines the term "debt collector" to include, amongst others: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another".  *See*, 15 U.S.C. §1692a(6).

17.     CICA is a collection agency that utilizes the instrumentalities of interstate commerce (i.e., telephone, e-mail, texts, US Mail, etc.) to conduct the business of collecting debts.

18.     As of December 18, 2024, CICA's website, at https://www.cicacollection.com confirms and declares that CICA is a collection agency.

19.     On behalf of clients, CICA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

20.     On December 22, 2023, CICA, by and through Mrs. Erica Fournier, as CICA Collections Manager sent Plaintiff, a collection letter in relation to the Consumer Debt (from now on, the "Collection Letter").

21.      The Collection Letter had the purpose to persuade and induced Plaintiff to pay the allege Consumer Debt by alluding to: 1) the possible need for future services from CLARO; 2) threatening to initiate legal proceedings, alleging that the debt was liquid and enforceable; and 3) further threatening to collect expenses, costs, and attorney's fees related to such threatened legal process; among other things.

**22.** The Collection Letter was utilized to convey information regarding the Consumer Debt.

**23.** The Collection Letter is a "communication" as such term is defined in 15 U.S.C. §1692a(2).

**24.** In addition, the Collection Letter incorporates false, deceptive and misleading representations.

**25.** Specifically, the Collection Letter falsely claims that Plaintiff still has an outstanding balance due and owed to CLARO when in fact, prior to December 22, 2023, Plaintiff had paid any and all outstanding amounts to CLARO.

**26.** As of December 22, 2023, Plaintiff did not owe $115.20 to CLARO, as alleged in the Collection Letter, nor to any other affiliate and/or associate of CLARO.

**27.** CICA attempted to collect the Consumer Debt using false, deceptive, and unconscionable means.

**28.** As a result of CICA's false, deceptive, and unconscionable collection practices Plaintiff had to spend time and money to address and remedy CICA's false and deceptive collection actions.

**V.     COUNT I – VIOLATION OF 15 U.S.C. § 1692d (HARASSMENT, OPPRESSION, AND ABUSE)**

**29.** Plaintiff re-alleges each and every previous allegation as if fully established herein.

**30.** Section 1692d of the FDCPA provides as follows: "**A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt**. . .". (emphasis ours). *See*, 15 U.S.C. 1692d

**31.** Hence, under 15 U.S.C. § 1692d, it is unlawful for a debt collector to engage in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

**32.** On December 22, 2023, CICA, by and through its agent, Mrs. Erica Fournier, as CICA Collections Manager, sent Plaintiff the Collection Letter threatening to initiate legal proceedings and impose legal costs, attorney's fees, and other expenses to collect the alleged Consumer Debt.

**33.** CICA's conduct, including threats of legal action on a debt that had already been satisfied and paid, had the natural consequence of harassing, oppressing, and abusing Plaintiff in direct violation of 15 U.S.C. § 1692d**.**

**34.** CICA further violated Section 1692d by threatening legal remedies it had no lawful basis to pursue.

**35.** CICA's improper threats caused Plaintiff to experience significant distress, confusion, and anxiety, as the natural consequence of CICA's actions was to harass, abuse and/or oppress Plaintiff into believing she still owed a debt that was already paid in full.

**36.** CICA's conduct, including the repeated misrepresentation of the legal status of the debt and threats of unlawful legal consequences, constituted harassing and abusive behavior under 15 U.S.C. § 1692d**.**

**37.** As a direct consequence of CICA's unlawful and abusive conduct, Plaintiff experienced a range of damages. These damages arose directly from CICA's improper collection practices and its false representations regarding a debt that was not owed.

**38.** Plaintiff's economic damages as result of CICA's actions include monetary damages such as financial losses stemming from the need to secure professional legal assistance.

Specifically, Plaintiff was forced to retain counsel to investigate and review CICA's improper and threatening Collection Letter, incurring unnecessary expenses that would not have been required absent CIC's conduct.

39.     Plaintiff also suffered physical and emotional damages as a result of CICA's actions. The stress and undue burden caused by CICA's threats resulted in physical manifestations, including muscle tension, persistent headaches, nausea, and sleep disruptions.

40.     Additionally, Plaintiff experienced significant emotional harm, including heightened anxiety, mental anguish, and emotional instability, stemming from CICA's false claims and intimidation tactics.

41.     The distress and disruption caused by CICA's conduct impaired Plaintiff's financial peace of mind and created avoidable turmoil in Plaintiff's personal life, directly undermining her efforts to maintain stability and security.

42.     As a result of CICA's violations of 15 U.S.C. § 1692d, Plaintiff is entitled to an award of actual damages and statutory damages pursuant to 15 U.S.C. § 1692k.

43.     Plaintiff is further entitled to an award of costs and attorney's fees pursuant to 15 U.S.C. § 1692k.

## VI.   COUNT II – VIOLATION OF 15 U.S.C. §1692e (FALSE OR MISLEADING REPRESENTATIONS)

44.     Plaintiff re-alleges each and every previous allegation as if fully established herein.

45.     Section 1692e of the FDCPA, in its pertinent part, states:

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing**, the following conduct is a violation of this section:

[. . .]

(2) The false representation of—
    (A) **the character, amount, or legal status of any debt;**

[. . .]

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

[. . .]

(10) The **use of any false representation** or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(emphasis ours). *See*, 15 U.S.C. § 1692e (2)(A), (5) and (10).

**46.**    "The FDCPA is 'a strict liability statue' and, thus, there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional." *See*, Vangorden v. Second Round, Ltd. P'ship, 897 F.3d 433, 437-38 (2d Cir. 2018) (citing Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128, 134 (2d Cir. 2017)). "**The strict liability standard applies to § 1692e claims.**" *See*, Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 646 (7th Cir. 2009). (emphasis ours).

**47.**    Therefore, "[d]ebt collectors may not make false claims, period." *See*, Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004); *see also*, Valle v. Westhill Exch., LLC, GJH-19-2304 (D. Md. Mar. 24, 2021) ("[A] debt collector may violate §1692e even if it unintentionally makes a false statement."); Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 995 (7th Cir. 2003) ("[U]nder §1692e ignorance is no excuse."); Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996).

**48.**    CICA's representation in the Collection Letter that Plaintiff owed $115.20 to CLARO was a false representation of the character, amount, or legal status of a debt in violation of 15 U.S.C. §1692e (2)(A).

**49.**    Specifically, the Collection Letter falsely represented that Plaintiff had a balance due of $115.20 with CLARO when in fact (a) no such amount was due; and (b) the alleged Consumer Debt was neither due nor owing.

50.    In fact, the Consumer Debt was paid directly to CLARO prior to December 22, 2023.

51.    Furthermore, Section 1692e(5) prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken. *See*, 15 U.S.C. §§ 1692(5).

52.    CICA violated 15 U.S.C. § 1692e(5) by threatening to take legal action against Plaintiff in the Collection Letter, despite the alleged debt having already been paid and satisfied. CICAs claim that the debt was liquid, due, and enforceable was false and constituted a threat to pursue legal remedies that could not legally be taken.

53.    CICA further violated 15 U.S.C. § 1692e(5) by threatening to collect legal costs, attorney's fees, and other expenses in connection with an alleged legal action. As the Consumer Debt was fully satisfied, CICA had no legal basis to allege having the right to pursue such remedies, rendering its threats unlawful and unenforceable.

54.    CICA's threats of initiating legal proceedings and collecting associated fees constituted deceptive, misleading, and unlawful conduct prohibited under 15 U.S.C. § 1692e(5).

55.    Lastly, Section 1692e(10) of the FDCPA also prohibits the "use [of] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer". *See*, 15 U.S.C. §§ 1692e(10).

56.    CICA's Collection Letter incorporates false representation and deceptive means by falsely deceiving Plaintiff onto the incorrect and false belief that Plaintiff still had an amount due and outstanding when in fact no such amount was owed or due.

57.    CICA violated Section 1692e(10) by using false representations and/or deceptive means to collect, or attempt to collect, the Consumer Debt and/or to obtain, or attempt to obtain information regarding the Plaintiff.

58.     As a result of CICA's false and misleading representations Plaintiff believed that she needed to pay the Consumer Debt and provide further information in relation to her personal character and said debt even though the Consumer Debt was already fully satisfied.

59.     But for Plaintiff expenditure of time and money, including the costs associated with having to retain counsel to review the Collection Letter, Plaintiff would have paid monies not owed by her.

60.     As a result of CICA's conduct Plaintiff suffered tangible and intangible injuries.

61.     Amongst Plaintiff's tangible injuries, Plaintiff suffered economic and physical damages and injuries. Economic damages include, but are not limited to, the costs associated with Plaintiff having to retain counsel to review the Collection Letter. Physical damages include, but are not limited to, physical tension, headaches, and upset stomach, all directly and proximately caused by CICA's actions.

62.     Amongst Plaintiff's intangible injuries, Plaintiff suffered emotional damages and injuries.  Emotional damages include, but are not limited to, extreme anxiety, severe emotional distress, and the mental anguish which has resulted from CICA's deliberate disruption of Plaintiff's financial rehabilitation efforts.

63.     As a result of CICA's conduct, Plaintiff is entitled to an award of actual damages and statutory damages pursuant to 15 U.S.C. §1692k to remedy the economic damages created by CICA's conduct.

64.     As a result of CICA's conduct, Plaintiff is entitled to an award of costs and attorney fees pursuant to 15 U.S.C. §1692k.

## VII.    COUNT III – VIOLATION OF 15 U.S.C. §1692f (UNFAIR OR UNCONSCIONABLE PRACTICES)

65.     Plaintiff re-alleges and incorporates by reference each and every previous allegation as if fully stated herein.

66.     Section 1692f of the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." *See*, 15 U.S.C. § 1692f.

67.     CICA violated 15 U.S.C. § 1692f by attempting to collect a debt that Plaintiff did not owe. Specifically, the Collection Letter, December 22, 2023, demanded payment of $115.20 for an alleged Consumer Debt that had already been paid in full prior to that date.

68.     It is inherently unfair and unconscionable to demand payment on a debt that has been fully satisfied. CICA's actions created an undue financial burden on Plaintiff, as CICA sought payment for an amount that was not legally due.

69.     CICA further violated 15 U.S.C. § 1692f by threatening to impose legal proceedings, legal costs, attorney's fees, and other expenses in connection with the alleged Consumer Debt. Such threats were baseless and unfair and served no purpose other than to intimidate and coerce Plaintiff into paying funds that were not owed.

70.     CICA's Collection Letter, falsely asserting the validity of the alleged debt and threatening legal consequences, forced Plaintiff to incur unnecessary financial costs and emotional distress to verify and address the validity of the claims made in the Collection Letter.

71.     As a direct consequence of CICA's unfair and unconscionable conduct, Plaintiff suffered financial harm, including costs associated with retaining counsel to review the Collection Letter. Plaintiff also experienced emotional and physical distress, including anxiety, confusion, headaches, and disruption to her financial peace of mind.

**72.** CICA's conduct represents the type of unfair and unconscionable practices that the FDCPA specifically prohibits, as it placed Plaintiff in an untenable position and created undue hardship through improper collection practices.

**73.** As a result of CICA's violations of 15 U.S.C. § 1692f, Plaintiff is entitled to an award of actual damages and statutory damages pursuant to 15 U.S.C. § 1692k.

**74.** Plaintiff is further entitled to an award of costs and attorney's fees pursuant to 15 U.S.C. § 1692k.

### VIII. <u>COUNT IV – SYSTEMATIC VIOLATION OF 15 U.S.C. §1692g (VALIDATION OF DEBTS)</u>

**75.** Plaintiff re-alleges each and every previous allegation as if fully established herein.

**76.** Plaintiff brings **Count IV** on her own behalf and on behalf of others similarly situated.

**77.** Section 1692g of the FDCPA expressly requires all debt collectors to communicate certain information to every consumer. Pursuant to 15 U.S.C §1692g(a) CICA must have provided Plaintiffs, amongst others, with the following information:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt

collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*See*, 15 U.S.C §1692g(a).

**78.**     Section 15 U.S.C §1692g(a) language, "commonly referred to as a 'validation notice,' gives the consumer **the information necessary to challenge the debt allegedly owed before making payment.**" (emphasis ours). *See*, Russell v. Equifax A.R.S., 74 F.3d 30, 32-33 (2d Cir. 1996).

**79.**     Furthermore, 15 U.S.C §1692g(b) of the FDCPA establishes that:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. **Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.**

(emphasis ours). *See*, 15 U.S.C §1692g(b)

**80.**     It is settled that the "[Seventh] and other circuits have long interpreted ***§1692g* to require that the mandatory disclosures be made so that they would be clearly understood by unsophisticated debtors.**" (emphasis ours). *See*, Steffek v. Client Servs., Inc. 948 F.3d 761 (7th Cir. 2020).

81.     Accordingly, "[i]t is not enough for a debt collection agency simply to include the proper debt validation notice in a mailing to a consumer [rather] Congress intended that such notice be clearly conveyed." *See*, Graziano v. Harrison, 950 F.2d 107, 111 (3rd Cir. 1991).

82.     Pursuant to 15 U.S.C §1692g "[a]ny communications "during the 30—day period **may not overshadow or be inconsistent with" the disclosure of the consumer's right to request validation**. . .". Rodríguez v. Cont'l Cent. Credit, Inc., No. 22-01056 (DRD), 2023 U.S. Dist. LEXIS 169691, at 15 (D.P.R. Sep. 21, 2023).

83.     The Collection Letter was the 'initial communication' mailed by Defendant to the Plaintiff (hereinafter, the "Initial Communication").

84.     The Initial Communication is a template and a form letter which - in identical form and substance - is mailed to all consumers and Plaintiffs from whom Defendant attempts to collect as an 'initial communication.'

85.     Defendant's Initial Communication violated 15 U.S.C. § 1692g(a) and (b) by overshadowing and contradicting the disclosures required under the FDCPA. The Initial Communication asserted that the debt was "liquid and enforceable" and that Defendant's client was within its rights to commence a money collection lawsuit against Plaintiffs. Additionally, the Initial Communication threatened the imposition of costs, expenses, and attorney's fees.

86.     These statements directly undermined Plaintiff's statutory rights to dispute the debt within thirty days of receiving the Initial Communication. By creating a false sense of urgency and implying that legal action was imminent, Defendant effectively coerced Plaintiffs into believing that immediate payment was necessary to avoid further harm.

87.     The language and tone of the Initial Communication overshadowed Plaintiffs' right to dispute the debt, rendering the validation notice ineffective and depriving Plaintiffs of the meaningful opportunity to exercise their rights under the FDCPA.

88.     As a direct result of Defendant's overshadowing and coercive statements, Plaintiffs suffered harm, including confusion and anxiety regarding their legal rights and obligations.

89.     Defendant's Initial Communication misled Plaintiffs into doubting their ability to challenge the alleged debt without risking adverse legal consequences.

90.     Defendant's conduct also caused Plaintiff to incur financial costs by consulting legal counsel to determine the validity of the debt. These unnecessary expenses would not have been required if Defendant had provided a clear and unobstructed validation notice, as mandated by law.

91.     The confusion, distress, and financial burden caused by Defendant's overshadowing language are precisely the types of harm that the FDCPA is designed to prevent.

92.     Defendant's actions exploited Plaintiffs lack of familiarity with debt collection laws and created an oppressive and coercive environment to extract payment.

93.      The aforementioned violations are equally applicable to the rest of the class members, as Defendant's Initial Communication is a standardized template letter used uniformly in its debt collection efforts. By including identical overshadowing language and omitting clear disclosures required under 15 U.S.C. § 1692g, Defendant systematically deprived Plaintiff, and all others similarly situated, of their statutory rights under the FDCPA.

94.      As a result of CICA's violations of 15 U.S.C. § 1692g, class members are entitled to an award of actual damages and statutory damages pursuant to 15 U.S.C. § 1692k.

95.     Class members are further entitled to an award of costs and attorney's fees pursuant to 15 U.S.C. § 1692k.

## IX.     COUNT V – SYSTEMATIC VIOLATION OF REGULATION F

96.     Plaintiff re-alleges each and every previous allegation as if fully established herein.

97.     Plaintiff brings **Count V** on her own behalf and on behalf of others similarly situated.

98.     Regulation F, effective as of November 30, 2021, implements the FDCPA, prescribing Federal rules governing the activities of debt collectors and supplements §1692 with more explicit and detailed information that debt collectors are required to disclose in the Initial Communication. *See*, 12 C.F.R. § 1006.34(c).

99.     Amongst others, such information includes: 1) "the itemization date". *See*, § 1006.34(c)(2)(vi)); 2) "[T]he amount of the debt on the itemization date". *See*, § 1006.34(c)(2)(vii); 3) and "an itemization of the current amount of the debt reflecting interest, fees, payments, and credits since the itemization date. . .". *See*, § 1006.34(c)(2)(viii)); among other things.

100.    Itemization date means any one of the following five reference dates for which a debt collector can ascertain the amount of the debt: 1) last statement date, 2) charge-off date, 3) last payment date, 4) transaction date, 5) judgment date. *See*, 12 C.F.R. § 1006.34(b)(3).

101.     Furthermore, Regulation F requires that the information provided in the initial communication be "clear and conspicuous" which means "readily understandable." *See*, 12 C.F.R. § 1006.34(b)(1).

102.     Defendant violated Regulation F, specifically 12 C.F.R. § 1006.34(c), by failing to include the required "itemization date" in the Initial Communication sent to the Plaintiffs.

103.    The omission of this critical reference date deprived Plaintiffs of the ability to determine when the alleged debt was incurred and assess the accuracy of the amount claimed.

104.    The Initial Communication also failed to provide an itemized breakdown of the debt, as required by 12 C.F.R. § 1006.34(c)(2)(vii)–(viii). Defendant's Initial Communication did not specify the amount of the debt as of the itemization date, nor did it clearly itemize interest, fees, payments, or credits applied since that date.

105.    Instead of complying with these requirements, the Initial Communication ambiguously characterized the balance of the account as "is not final" and that it "could" accumulate additional interest, charges, or penalties. This vague and indefinite language left Plaintiffs unable to ascertain the actual amount owed or determine how and when additional charges might be computed, in direct violation of 12 C.F.R. § 1006.34(c)(2)(viii).

106.    Defendant's failure to provide specific information about the amount of the alleged debt, including a clear statement of whether and how interest or other charges would accrue, violated the "clear and conspicuous" requirement under 12 C.F.R. § 1006.34(b)(1). The Initial Communication was not "readily understandable," as it failed to establish the exact amount owed or the calculation of any potential additional charges.

107.    The misleading nature of the Initial Communication caused Plaintiffs to experience confusion and uncertainty about the debt's validity and amount. Plaintiffs were unable to verify the debt, determine whether it was accurate, or assess whether additional charges were lawful, thereby hindering her ability to dispute the debt or request validation as permitted under the FDCPA.

108.    Defendant's violations of Regulation F harmed Plaintiffs by causing them the expenditure of time and resources to consult legal counsel to understand the obligations alleged in the Initial Communication.

109.    The aforementioned violations are equally applicable to the rest of the class members, as Defendant's Initial Communication is a standardized template letter used uniformly in its debt collection practices. By omitting the required itemization date, failing to provide an itemized breakdown of the debt, and including ambiguous language about potential additional charges, Defendant systematically deprived all recipients of the clear and conspicuous information mandated under 12 C.F.R. § 1006.34, causing similar monetary damages to the members of the class.

110.    As a result of CICA's violations of 12 C.F.R. § 1006.34, class members are entitled to an award of actual damages and statutory damages pursuant to 15 U.S.C. § 1692k.

111.    Class members are further entitled to an award of costs and attorney's fees pursuant to 15 U.S.C. § 1692k.

## X.    CLASS ALLEGATIONS

112.    Plaintiff re-alleges each and every previous allegation as if fully established herein.

113.    Plaintiff brings **Count IV** and **Count V** on behalf of herself and similarly situated persons, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

114.     The Class consists of:

**a.**  all natural persons with a Puerto Rico address;

**b.**  who were sent an Initial Communication in the form of the template letter described herein;

**c.**  on or after a date one year prior to the filing of this action; and

**d.** on or before a date 30 days after the filing of this Complaint.

**115.** The class members are so numerous that joinder is impracticable.

**116.** On information and/or belief, based on the use of a standardized template letter, there are more than 1,000 natural persons with a Puerto Rico address in the class defined herein.

**117.** There are questions of law and fact common to all class members, which predominate over any individual issues. These predominant questions include, but are not limited to:

**a.** Whether Defendant's Initial Communication is a standardized template letter;

**b.** Whether Defendant's Initial Communication violated 15 U.S.C. § 1692g (a) and (b) by overshadowing or contradicting the consumer's right to dispute the debt within the thirty-day validation period through misleading language.

**c.** Whether Defendant's Initial Communication violated 12 C.F.R. § 1006.34(c) by omitting the required "itemization date";

**d.** Whether Defendant's Initial Communication violated 12 C.F.R. § 1006.34(c)(2) by failing to include an itemized breakdown of the debt, including interest, fees, payments, or credits applied since the itemization date;

**e.** Whether Defendant's Initial Communication violated the "clear and conspicuous" standard of 12 C.F.R. § 1006.34(b)(1) by failing to provide debt-related disclosures in a manner that was readily understandable to the least sophisticated consumer;

**118.** Plaintiff's claims are typical of the claims of the class members. All claims arise from the same standardized Initial Communication, factual circumstances, and violations of 15 U.S.C. § 1692g and Regulation F.

119.    Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer protection and debt collection abuse cases, including class action litigation.

120.    A class action is superior to other alternative methods of adjudicating this dispute because:

a.    Individual cases are not economically feasible for class members, as the potential recovery for each is not cost-effective and costs outweigh the potential recovery for a single claim;

b.    Many consumers may not realize their rights were violated due to the misleading and ambiguous nature of Defendant's communication; and

c.    Congress and federal regulators, including the Consumer Financial Protection Bureau ("CFPB"), intended for class actions to serve as a primary enforcement mechanism under the FDCPA and its implementing regulations, such as Regulation F.

121.    Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant.

122.    Individual adjudications would also, as a practical matter, dispose of the interests of other class members not parties to those adjudications or substantially impair or impede their ability to protect their interests.

123.    Defendant has acted or refused to act on grounds generally applicable to the class, making final injunctive or declaratory relief appropriate with respect to the class as a whole.

**124.**    Specifically, Defendant's standardized Initial Communication violates 15 U.S.C. § 1692g and Regulation F, and an injunction prohibiting Defendant from continuing to use this communication is appropriate to prevent further harm to the class members.

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Honorable Court certify the proposed Class pursuant to Rule 23 of the Federal Rules of Civil Procedure; appoint Plaintiff as the Class Representative and Plaintiff's counsels as Class Counsels; award compensatory, statutory, and punitive damages as applicable; grant injunctive or declaratory relief to prevent further unlawful conduct; order restitution and disgorgement of any ill-gotten gains; award reasonable attorneys' fees, litigation expenses, and costs; and grant such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 23th day of December 2024.

**THE BATISTA LAW GROUP, PSC.**
P.O. Box 191059
San Juan, PR. 00919
Telephone: (787) 620-2856
Facsimile: (787) 777-1589

*/s/ Jesus E. Batista Sánchez*
Jesus E. Batista Sánchez, Esq.
USDC-PR No. 227014
E-mail: jeb@batistasanchez.com

*/s/ William Rivera Vélez*
William Rivera Vélez, Esq.
USDC-PR No. 229408
E-mail: wrv@batistasanchez.com

*/s/ Carlos A. Ortiz Morales*
Carlos A. Ortiz Morales, Esq.
USDC-PR No. 120402
E-mail: comlaw@gmail.com

*/s/ Josef J. Pagán Maisonet, Esq.*

Josef J. Pagán Maisonet, Esq.
USDC-PR No. 309710
E-mail: jjp@batistasanchez.com